871 So.2d 575 (2004)
STATE of Louisiana
v.
Claude ROBINSON.
No. 03-KA-1350.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*577 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Walter G. Amstutz, Cameron M. Mary, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Claude Robinson, with one count of felon in possession of a firearm in violation of LSA-R.S. 14:95.1; one count of possession of a firearm while in possession of a controlled dangerous substance in violation of LSA-R.S. 14:95(E); one count of possession of MDMA in violation of LSA-R.S. 40:966(C); one count of possession with intent to distribute cocaine in violation of LSA-R.S. 40:967(A); and one count of possession of cocaine between 28 and 200 grams in violation of LSA-R.S. 40:967(F).[1] Defendant pled not guilty and filed several pre-trial motions, including a motion to suppress the evidence. After a hearing on September 7, 2001, the trial court denied defendant's motion to suppress.
Thereafter, defense counsel filed a motion for a sanity commission. A sanity hearing was held on October 31, 2001, at which time defendant was found incompetent to stand trial. A second sanity hearing was held approximately one year later on October 23, 2002, after which defendant was found competent for trial.
*578 On June 17, 2003, defendant proceeded to trial on the charge of possession with intent to distribute cocaine. After a two day trial, a twelve person jury found defendant guilty as charged. The trial judge subsequently sentenced him to twenty-five years at hard labor. The state dismissed the remaining four counts against defendant and filed a multiple offender bill of information alleging defendant to be a fourth felony offender. The multiple offender hearing is currently pending.
Defendant now appeals his conviction challenging the denial of his motion to suppress the evidence.

FACTS
On February 9, 2001, Agent Todd Vignes obtained a search warrant for 634 Second Avenue in Harvey based on information that defendant was involved in narcotics activity at that location. The warrant was executed at approximately 11:50 p.m. on the same date. Agent Vignes, along with six or seven additional narcotics officers, quietly approached the specified residence wearing either black T-shirts or blue wind breakers bearing the POLICE insignia. Once on the porch, Agent Vignes heard people inside the home talking. The voices stopped and Agent Vignes saw someone look outside through the side panel window of the door. Agent Vignes then heard someone yell inside the home and heard scurrying movement away from the door and front room. Concerned the occupants of the home knew of the police presence and the probability they would destroy the evidence or obtain a weapon, Agent Vignes authorized immediate entry into the home.
A battering ram was used on the front door to gain access. When the battering ram first hit the door, Agent Vignes announced, "police with search warrant." After approximately three hits, the police were able to enter the home which was a shotgun double. Four people were in the home including defendant who was found in the kitchen at the back of the house. As Agent Vignes approached defendant, he observed defendant reach into a Crown Royal bag, pull out a brown pill bottle, and attempt to open the pill bottle and discard its contents down the kitchen sink drain. When Agent Vignes reached defendant, defendant shoved the pill bottle into his sweat pants.
Defendant was subsequently arrested and the pill bottle was seized from his pants. The pill bottle contained five clear plastic bags each containing off-white rocks that later tested positive for cocaine. A search of the home revealed $1,300, which was found in a brown sock in the Crown Royal bag, razor blades, and plastic baggies with the corners removed. According to Agent Vignes, defendant stated that he lived at the residence alone and any drugs found belonged to him.
Defendant presented the two co-defendants, Eric Homrich and Chiro Chimento, as witnesses at trial. Both witnesses, who had already pled guilty to the drug charges related to the incident, testified the drugs and the money belonged to Homrich.

DENIAL OF MOTION TO SUPPRESS
On appeal, defendant argues that the trial court erred in denying his motion to suppress the evidence on two grounds: 1) the search warrant was invalid, and 2) the search was unreasonable. Defendant maintains the search warrant was not based on probable cause because the information upon which it was based came from an unknown, unidentified, and untested informant who passed the information to an alleged reliable and credible informant who then gave the information to the police. Defendant also contends there was *579 minimal corroboration of the information given by the informant. Defendant further asserts the search was unreasonable because the police entered the residence without knocking and announcing.
Every person is protected by the United States and Louisiana Constitutions against unreasonable searches and seizures of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. U.S. Const. amend. IV; La. Const. art. I, § 5 (1974); State v. Lipton, 02-162 (La.App. 5 Cir. 9/30/03), 857 So.2d 1162, 1164.
In order to be valid, "[a] search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." LSA-C.Cr.P. art. 162. Probable cause consists of facts and circumstances sufficient to support a reasonable belief that an offense has been committed and that evidence of the crime or contraband may be found at the place to be searched. The facts and circumstances must be within the affiant's knowledge and based upon reasonably trustworthy information. Further, the facts establishing the probable cause must be contained within the four corners of the affidavit. State v. Green, 02-1022 (La.12/4/02), 831 So.2d 962, 968-969; State v. Lipton, supra.
The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that the evidence of a crime will be found in a particular place. State v. Green, supra at 969; State v. Lipton, supra at 1165. The magistrate's determination of probable cause to issue a search warrant is entitled to significant discretion and "marginal cases should be resolved in favor of finding the magistrate's assessment to be reasonable." State v. Rodrigue, 437 So.2d 830, 833 (La.1983). The reviewing court must simply insure that under the totality of the circumstances, the issuing magistrate had a "substantial basis" for concluding that probable cause existed. State v. Green, supra at 969, citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
We must now determine whether the affidavit sufficiently set forth facts and circumstances from which the magistrate could have reasonably concluded that probable cause existed for the issuance of the search warrant. Agent Todd Vignes submitted the application for the search warrant, and his affidavit set forth the following facts: Agent Vignes met with a confidential informant (CI) who told him an older black male was selling crack cocaine from 634 Second Avenue in Harvey. The CI indicated he could not directly purchase anything from the residence but knew another person who could. This person was referred to as the unwitting informant. At Agent Vignes' direction, the CI contacted the unwitting informant, who agreed to make the purchase. With the CI's permission, Agent Vignes listened to a phone conversation between the CI and the unwitting informant wherein the unwitting informant agreed to meet with the CI, proceed to 634 Second Avenue, and purchase cocaine from the occupants at that address using the CI's money. The CI and his vehicle were searched for illegal drugs and then the CI was given prerecorded money to facilitate the drug buy.
The affidavit further stated that surveillance was established at 634 Second Avenue and on the CI. During the surveillance, the CI met with the unwitting informant and proceeded to 634 Second *580 Avenue. The unwitting informant entered the residence and exited after approximately two minutes with a quantity of cocaine. When the unwitting informant exited the residence, the CI observed an older black male looking out of the door. The unwitting informant gave the CI cocaine and told the CI the occupants of 634 Second Avenue would be dealing all night. The unwitting informant also told the CI the black male selling the cocaine was nicknamed "Scooby." The CI then dropped the unwitting informant off at a prearranged location. All this occurred while the CI was under surveillance.
The CI met with investigators and turned over the purchased drugs which field tested positive for cocaine. During surveillance on the residence, investigators noted two vehicles parked in front. Through a license plate check, it was determined one of the vehicles was registered to defendant. Agent Vignes was familiar with defendant and knew he had numerous arrests and at least one conviction for narcotics offenses. Agent Vignes also knew defendant was nicknamed "Scooby" or "Scooby Doo."
Defendant now argues that the affidavit failed to establish probable cause because the reliability and credibility of the unwitting informant was not proven. He contends the mere fact critical information passed through a reliable and credible confidential informant does not make the original source of the information sufficiently reliable for purposes of establishing probable cause.
Contrary to defendant's claim, the independent reliability of the unwitting informant is not the issue. Rather, the issue is whether, under the totality of the circumstances, there is a sufficient basis upon which the trial court could have found probable cause to issue the search warrant. While the veracity, reliability or basis of knowledge of a CI is relevant in evaluating probable cause, it is not the determining factor. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Hogan, 02-924 (La.App. 5 Cir. 1/28/03), 839 So.2d 296, 299.
The initial information that the residence at issue was involved in drug activity came from what Agent Vignes described as a reliable and credible CI. In the affidavit, Agent Vignes stated the confidential informant had "proven to be both reliable and credible having supplied officers with information and assistance that led to the arrest of numerous narcotics dealers in the past and to the seizure of illegal drugs." The reliability of the CI was not traversed.[2]
The affidavit contained further information which corroborated the CI's information. The CI indicated a third party could purchase cocaine from the residence. Agent Vignes corroborated this by listening in on a phone conversation between the CI and the third party, referred to in the affidavit as the "unwitting informant." While under surveillance, the third party entered the specified residence, stayed for two minutes and returned to the CI's vehicle at which time the third party gave the CI cocaine and identified the man from whom he purchased the cocaine as "Scooby." The police identified one of the vehicles parked in front of the residence as being registered to defendant, who Agent Vignes knew as "Scooby" or "Scooby Doo." Agent Vignes was also aware defendant had a prior conviction for a narcotics offense *581 for which he was presently on parole.
Based on the totality of the circumstances, the information from the CI and corroboration of the information by police surveillance and investigation, we find that the trial court had a substantial basis upon which to find probable cause to issue a search warrant. The affidavit presented preliminary information from a reliable and credible confidential informant that was subsequently corroborated by the police. The fact information from an unknown third party was utilized during the investigation does not render the information unreliable. The information from the third party was that a man named "Scooby" sold him the drugs. The truth of this information was supported by further police investigation that revealed a vehicle parked in front of the residence was registered to a man known to have the nickname "Scooby" and who had a prior conviction for a narcotics violation.
Even assuming the affidavit did not establish probable cause to support the issuance of a search warrant, suppression of the evidence seized pursuant to the warrant is not automatically required. Where a law enforcement officer relies in good faith on a magistrate's probable cause determination and the technical sufficiency of the warrant, exclusion of the evidence is not proper. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984); State v. Hogan, 02-924 (La.App. 5 Cir. 1/28/03), 839 So.2d 296, 299. There are no allegations that the police obtained the warrant in bad faith.
On appeal, defendant also claims the search was unreasonable and, therefore, the evidence should have been suppressed. He maintains the police were not justified in entering his home without knocking and announcing their presence. Defendant contends the occupants' mere awareness of police presence is insufficient to establish exigent circumstance so as to dispense with knocking and announcing.
An officer who executes a search warrant may use such means and force as is authorized for an arrest. LSA-C.Cr.P. art. 164; State v. Miskell, 98-2146 (La.10/19/99), 748 So.2d 409, 412. LSA-C.Cr.P. art. 224 governs forcible entry when making an arrest and provides that a peace officer making an arrest may break open a door of a dwelling if he has announced his authority and purpose and is refused admittance. Article 224 also provides that the peace officer "need not announce his authority and purpose when to do so would imperil the arrest."
The United States Supreme Court has held that the Fourth Amendment of the United States Constitution incorporates the common law requirement that police officers must knock on the door and announce their identity and purpose before attempting a forcible entry into a residence to execute a search warrant. Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The obligation to knock and announce may be dispensed with when the police officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). Whether police officers had reasonable suspicion to justify noncompliance with the knock-and-announce requirement is determined by the facts of each case.[3]Id.
*582 In State v. Miskell, 98-2146 (La.10/19/99), 748 So.2d 409, the Louisiana Supreme Court upheld the district court's denial of a motion to suppress evidence finding the police officers' unannounced entry into defendant's home, by prying burglar bars off the home with a winch and kicking in the front door, was reasonable. In Miskell, the police obtained a search warrant based on information from a confidential informant that an older black man was selling cocaine from his residence and also the detective's subsequent personal observation of a controlled drug buy at defendant's residence.
In upholding the reasonableness of the no-knock entry, the supreme court stated, "it is well recognized that a police officer's past experience, training, and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable." Miskell, supra at 414. Although the police had no information about weapons or any threat to safety, the supreme court found the noknock entry reasonable based on the observation of drug sales immediately prior to the execution of the search warrant, the fact the defendant had drugs on his person which could easily be destroyed if advance warning of entry had been given, and the existence of burglar bars on the main entrance to the residence.
In State v. Taylor, 99-1154 (La.App. 5 Cir. 2/29/00), 757 So.2d 63, writ denied, 00-1021 (La.3/30/01), 788 So.2d 441, this court found that the police were reasonable in entering a home without knocking and announcing their presence.[4] In Taylor, the police obtained a search warrant for defendant's residence based on information from a confidential informant that defendant was selling marijuana from his residence. When the police approached the residence to execute the search warrant, an unknown black male ran from the porch. One officer chased the fleeing man while the other officers entered the house through the front screen door which was closed but unlocked.
This court acknowledged that none of the officers could testify that they suspected defendant was armed and thus dangerous, or that they had previous knowledge someone was inside the house destroying evidence. Relying on State v. Miskell, supra, this court stated it had to defer to reasonable inferences drawn from whatever factors the developing situation presented to trained, experienced law enforcement officers. Based on the facts, that a CI had recently made a drug buy at the residence, the front door of the residence was simply a screen door, and an individual immediately fled from the porch upon the arrival of the police, this court concluded "[i]t does not take trained law enforcement officials to realize that the officers' duty to `announce' their entry has been otherwise satisfied." State v. Taylor, 757 So.2d at 71. This court explained these facts would create an inference in experienced officers that as soon as any other occupants of the house identified the source of the noise outside, those remaining would attempt to either escape or destroy the contraband.
In the present case, we find that the no-knock entry was reasonable. Agent Vignes obtained the search warrant at 11:25 p.m. based on information from a *583 confidential informant that a person inside the residence was selling cocaine, a subsequent controlled drug buy that occurred within three hours of the application for the search warrant, and surveillance. At 11:38 p.m., Agent Vignes and six or seven additional members of the narcotics division executed the search warrant.[5] The police approached the residence in a "stealth like manner" and were dressed in clothes bearing the word "POLICE." Some of the police officers wore hats with POLICE written on them and Agent Vignes had a ballistic shield with the word "SHERIFF" written on it. Once on the porch, Agent Vignes heard talking which stopped when someone looked out the side window panel of the front door. Agent Vignes heard somebody yell one word and then heard scurrying inside the house away from the front room.
Agent Vignes testified at the hearing on the motion to suppress that he felt the occupants were aware of police presence once one of the occupants looked out the window onto the front porch where the officers, who were dressed in police attire, were standing. He further stated that when one of the occupants made an announcement and ran from the door as opposed to opening the door, he believed the occupants were going to destroy evidence or secure a weapon.
Like the above cases, the officers in this case had no specific information that defendant was armed or that someone was inside the house destroying evidence. However, as stated in State v. Taylor, 757 So.2d at 71, "[i]t does not take trained law enforcement officials to realize that the officers' duty to `announce' their entry has been ... satisfied." An occupant of the residence looked out the window and saw the police. Instead of opening the door, the occupant yelled and ran away from the front room. These facts, coupled with the fact a drug buy had occurred within three hours of executing the search warrant, clearly create the inference in the minds of trained and experienced officers that the occupants would attempt to destroy any contraband. Additionally, Agent Vignes knew defendant had prior arrests for attempted first degree murder, aggravated assault, and resisting an officer, all violent offenses. This information created a reasonable inference that defendant could be dangerous and may have weapons at his disposal. Thus, under the circumstances, the no-knock entry was reasonable. The facts show the police had reasonable suspicion to believe evidence within the home would have been destroyed and that they faced potential harm if entry had been delayed.
Based on the foregoing discussion, we find that the trial judge did not err in denying defendant's motion to suppress the evidence. The arguments raised by defendant in this assigned error are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that the trial judge did not advise defendant of the two-year prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. Thus, the trial *584 court is hereby instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writs denied, 03-0200 (La.10/10/03), 855 So.2d 326, and 03-0503 (La.10/10/03), 855 So.2d 329.
Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence. The case is remanded to the trial court with instructions to inform defendant of the prescriptive period for seeking post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The bill of information also charged codefendants, Eric Homrich and Chiro Chimento, with various counts. However, they are not parties to the instant appeal.
[2] It is a defendant's burden of proof that representations made in an affidavit for a search warrant are false. State v. Hogan, 02-924 (La.App. 5 Cir. 1/28/03), 839 So.2d 296, 299.
[3] The United States Supreme Court recently reiterated these principles in United States v. Banks, ___ U.S. ___, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003). Banks was concerned with the reasonableness of the 15-20 second time delay between when the officers knocked and announced until they broke open the door.
[4] The issue in Taylor was raised through an ineffective assistance of counsel claim in which defendant claimed his trial counsel was ineffective for failing to object to the manner in which the search of his residence was conducted.
[5] In reviewing a ruling on a motion to suppress, the appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial. State v. Higgins, 01-368 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, 921, writ denied, 01-3267 (La.11/1/02), 828 So.2d 565, cert. denied, 538 U.S. 1038, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003).